the result of the issuance of a constitutionally deficient search warrant.

The court, therefore, concludes that the motion of the defendant is well taken and it is hereby sustained.

Wherefore the court hereby quashes both counts in the indictment, suppresses all evidence obtained by the arresting and investigating officers applicable to each count in the indictment, and it is further the order of the court that all such evidence so obtained be returned to the dedefendant forthwith.

*Judgment accordingly.*

KING *v.* GROSS ET AL.

(No. 206421—Decided July 7, 1970.)

Common Pleas Court of Lucas County.

*Mr. Loren G. Ishler,* for plaintiff.
*Mr. Willard A. Johnson,* for defendants.

CONNORS, J. The issues presented, simply stated, are:

1. Did the duly elected members of the city of Toledo Council enter into a contract with the Office of Economic Opportunity of the United States Government in contravention of R. C. 731.48?

2. Does the contract providing for police aids violate R. C. 143.31?

3. Does the contract violate R. C. 143.33 or Section 146 or 171 of the Charter of the city of Toledo?

4. Does the contract providing for police aids in the city of Toledo violate the equal protection clause of the Fourteenth Amendment to the United States Constitution?

The court, in deciding these issues, comments as follows:

As to issue one. The city of Toledo is a home-rule charter city under Article XVIII, Sections 3 and 7 of the Constitution of Ohio, and, therefore, has a right to local self-government as expressed in its charter, and its charter, ordinarily, takes precedence over state statutes. Should a city charter fail to determine certain areas of legal precedent, then the governing body of law remains within the state statutes. Counsel for the plaintiff, as concerns issue one, points to R. C. 731.48, which provides as follows:

"The legislative authority of a municipal corporation shall not enter into any contract which is not to go into full operation during the term for which all members of such legislative authority are elected."

There is only one reported case interpreting this section of the Code, that being *Browne* v. *Village of Ripley,* 67 Ohio App. 112, a Brown County Court of Appeals decision, a well-reasoned opinion for the particular fact situation before that court.

Counsel for plaintiff has carefully indexed, as has this court, the charter for the city of Toledo with reference to sections which refer to the powers of the council to enter into and carry out contracts on behalf of the city. These are Sections 4, 29, 117, 118, 225, 226, 228, 229 and 230.

Nowhere in the charter provisions is contained the express (or could it be implied) authority for the council to enter into a contract which would grant it the power to circumvent the restrictive prohibition of the state statute as expressed in R. C. 731.48. Therefore, that power, not being granted in the charter, is a prohibition against the council of the city of Toledo.

We come now to the question of whether or not the incumbent members of the 1968-1969 council did, in fact, enter into a contract with the Office of Economic Opportunity Planning Association of Greater Toledo, Inc., which would have been binding on the present council, elected for 1970-1971, and, therefore, violative of R. C. 731.48.

This court is of the opinion that the council did not. The agreement, entered into on September 1, 1969, merely provides that the federal agency, as a co-operative project, will recruit certain applicants for training as police aids. These recruits must be residents of the city of Toledo, between the ages of 21 and 35, and be of good physical and mental health. They are, and were, recruited and hired by the Economic Opportunity Planning Association of Greater Toledo, Inc.; they were, and are, therefore, as of this date, employees of an agency of the federal government, and not the city of Toledo; their services are offered to the city of Toledo to assist regularly appointed police officers with certain para-professional duties which, while essential to the operation of the city, do not make great demand upon the talents of the persons performing.

A careful examination of the contract reveals no bind-

ing obligation on the present council to go further than the existing council at the time the contract was signed intended to do; the contract is replete with language that the city *would hope* to be in a position to take over the program at the expiration of the one-year agreement, depending on the experience of usefulness, financial status of the city, etc. It is contemplated that the city will, from this group of now experienced aids, hire certain aids, under certain conditions, for the permanent city payroll. This will, and can, be done only if these aids can pass a civil service examination, if they possess the qualifications as set down by the civil service commission, if police aid classifications still exist under the civil service rules and city ordinances, if police aids are needed at the time, and if the city is in a financial position at the time the present contract expires on August 31, 1970. There is no language in the contract which would attempt to bind the present council, and the contract is, therefore, not violative of R. C. 731.48.

With reference to issue two, the court's attention is drawn to R. C. 143.31, which provides as follows:

"No person shall be eligible to receive an original appointment to a police department, as a policeman or policewoman, subject to the civil service laws of this state, unless he has reached the age of twenty-one. No person shall be eligible to receive an original appointment on and after his thirty-first birthday."

Again, the court is faced with a question whether the charter of the city of Toledo supersedes the state statute, and, again the answer is negative. The provisions of the charter relating to policemen are found in Sections 140, 141, 143, 144, 145, 146 and 147. There are no provisions made in the charter respecting age limitations and, therefore, the state statute controls. R. C. 143.31 sets the age limits between 21 and 31; the contract in question sets the limits between 21 and 35.

Being of the opinion that the present group of police aids are not employees of the city of Toledo, albeit under the supervision and control of the city, it can hardly be argued that the state of Ohio can control the age limits

of persons being paid by the federal government and utilized by a municipality.

There may be a time, if the city of Toledo intends to take over this program upon the expiration of the contract and make these people *its* employees, when, absent a grant under the home rule provisions and the existing city charter, the city will be faced with this question of flying into the face of R. C. 143.31, and will be required to adopt civil service rules and regulations which will not be violative of the state statute. The court is not required herein to decide this premature question. Then, too, there may be a fine line of definition between the policeman and policewoman referred to in R. C. 143.31 and a police aid—the question of powers granted an aid may be such as to remove them from the operation of state law.

With reference to issue three. Holding, once again, that those persons now engaged as police aids are not the employees of the city of Toledo, nor of the state of Ohio, therefore, R. C. 143.33 and Sections 146 and 171 of the charter of the city of Toledo, with reference to civil service examinations and rules, have no application.

This court is of the opinion that if and when the city of Toledo undertakes this program as its own, it will be bound by R. C. 143.33 and Sections 146 and 171 of its own charter. Again, this is a premature issue not to be decided herein.

With reference to issue four. The plaintiff contends that the existing contract violates the provisions of equal protection of the Fourteenth Amendment to the Constitution of the United States. Axiomatically this includes the principle of equal rights.

Counsel for plaintiff makes a strong argument, based upon the language of the contract, that one of the objectives of the program being "to provide meaningful, productive and dignified career opportunities to presently unemployed or underemployed *model cities* residents," there is an unequal opportunity of participation in the program to those residents outside the so-called "model city." Frankly, this court has some difficulty defining the so-

called "model city" in terms of geographical boundaries, although it is cognizant of what areas of a city are often referred to as such.

The court certainly agrees with counsel for the plaintiff that it would be a travesty of justice if the application of the contract would be to deny *any* citizen living within the boundaries of the municipality of Toledo, he or she otherwise possessing the necessary qualifications, from the opportunity of participating in the role of a police aid. This opportunity should be available to *all* residents of the city of Toledo, regardless of race, color, or creed, and not to one designated area, such as the "model city," whatever that is. Otherwise, the equal opportunity guaranteed under the Fourteenth Amendment to the United States Constitution *is* denied.

While one of the *objectives* of the contract is to provide employment to "model city" residents, among the *qualifications* spelled out in the contract is that the applicant-participant simply "be a resident of the city of Toledo," and there is no mention of the so-called "model city" within Toledo.

Based upon a strict interpretation of the contract itself, this court is not inclined to strike down the contract on the unequal protection thesis.

It well may be that in the future a citizen living within the corporate limits of Toledo may have just cause to complain that he or she has been denied the equal protection of the law in that he or she was denied the opportunity for employment in this program because he or she does not live within the so-called "model city," as defined by an administrative agency or commission.

The petitioner herein is not so complaining personally, and, though he sues as a taxpayer, on behalf of all the citizens of Toledo, no evidence was heard by the court to the effect that any citizen has been so denied.

For the foregoing reasons, the prayer for injunctive relief is denied, and this cause dismissed at petitioner's costs.

*Injunction denied.*